Jacquelyn L. MORRIS, Appellant,

v.

AMERICAN NATIONAL CAN CORPORATION, Glen Besore, David Scott, Appellees.

Nos. 90–1235, 90–2289.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided Dec. 23, 1991.

Rehearing and Rehearing En Banc Denied Dec. 23, 1991.

Michael J. Hoare, St. Louis, Mo., argued, for appellant.

Thomas C. Walsh, St. Louis, Mo., argued (James P. Mannion, Jr., Larry M. Bauer, and Sabrina M. Wrenn, on the brief), for appellees.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Jacquelyn L. Morris appeals from an order of the district court limiting her award of backpay to the time preceding American National Can's offer to reinstate her. She also appeals from the district court's calculation of backpay damages and from a district court order refusing to enhance her award of attorneys' fees. We affirm the district court's judgment with respect to the termination and calculation of backpay, but reverse and remand for further proceedings with respect to the award of attorneys' fees.

Morris was subjected to ongoing and pervasive acts of sexual harassment. The issues presented in this appeal make it unnecessary for us to catalog the sordid and egregious details reported in *Morris v. American National Can Corporation*, 730 F.Supp. 1489, 1490–94 (E.D.Mo.1989). Suffice it to say, the district court found that Morris was subjected to unwelcome sexual harassment from 1984 until her resignation on March 30, 1987, and that neither American Can nor her supervisor, Glen Besore, took effective remedial action to end the harassment. *Id.* at 1495–96.

The district court held that Morris was entitled to an award of backpay from the date of her resignation until the date American Can made an unconditional offer of reinstatement on September 8, 1987. *Id.* at 1497. The court also awarded her seniority dating from her initial date of hire, *id.* at 1497, and ordered American Can to develop a staff training program and a grievance procedure relating to sexual harassment in the work place. *Id.* at 1498. The district court awarded Morris $61,608.60 in attorneys' fees, and $5,941.48 in costs. *Morris v. American Nat'l Can Corp.*, No. 87–1161C(3), slip op. at 18–19 (E.D.Mo. June 25, 1990). The district court rejected Morris's argument that she is entitled to an enhanced fee award to compensate counsel for the contingent risk inherent in litigation under Title VII. *Id.* at 18.

On appeal, Morris attacks the district court's holdings: (1) terminating her award of backpay at the time American Can made her an offer of reinstatement; (2) declining to calculate the amount of backpay damages based on the earnings of a co-worker; and (3) holding that Morris is not entitled to an enhanced attorneys' fee award. We address these arguments in turn.

## I.

Morris first argues that the district court erred in holding that American Can made an unconditional offer to reinstate her on September 8, 1987, and by tolling American Can's liability for an award of backpay from that date.

■ In *Ford Motor Company v. Equal Employment Opportunity Commission*, 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982), the Supreme Court held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." Thus, in general, the relevant period for measuring backpay liability is the time between the termination and the plaintiff's action upon an offer of reinstatement. *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 808 (8th Cir.1982). Nevertheless, if a plaintiff reasonably rejects an offer of reinstatement, then the offer does not terminate the accrual of backpay damages. *Id.*

The district court held that American Can unconditionally offered Morris reinstatement on September 8, 1987, that she accepted the offer on December 18, 1987,[1] and that she returned to work on March 8, 1988. *Morris*, 730 F.Supp. at 1494.

■ Morris first argues that the district court erred in tolling American Can's backpay liability from September 8, 1987, because American Can required her to transmit medical records and to take a physical examination before returning to work, and therefore, the company's offer of reinstatement was conditional and did not provide for reinstatement. For support, Morris cites *Orzel v. City of Wauwatosa Fire Department*, 697 F.2d 743, 757 (7th Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983). In *Orzel*, the Seventh Circuit held that the defendant did not toll its backpay damages by offering reinstatement conditional upon the plaintiff taking and passing a physical examination. *Id.* at 757.

The Seventh Circuit in *Orzel* did not, however, conclude that the defendant could not toll its backpay liability because it conditioned the offer on plaintiff taking a physical examination. Rather, it refused to

1. The parties do not discuss the possible question of whether backpay should have been awarded from December 18, 1987.

toll the backpay period because it concluded that the plaintiff reasonably refused to accept the offer. *Id.* at 757. The circumstances in *Orzel* are not similar to the circumstances in this case. Morris had quit her job because of medical reasons and had received workers' compensation benefits. 730 F.Supp. at 1493. Morris was also bound by a collective bargaining agreement which allowed American Can to require her to take a physical examination before returning to work. These are not the same circumstances as in *Orzel,* in which the plaintiff's health was not in question and the employer had no basis for requesting a physical examination. *Orzel* does not control.

■ Morris also claims that the September 8, 1987, offer of reinstatement was conditional because it required her to return to work as a "new-hire" without the seniority she had earned since her initial date of hire. That American Can did not offer Morris retroactive seniority is of no consequence. The Supreme Court has specifically held that "[a]n employer's unconditional offer of the job originally sought ... need not be supplemented by an offer of retroactive seniority...." *Ford Motor Co.,* 458 U.S. at 232, 102 S.Ct. at 3065. Thus, we reject Morris's arguments that the district court erred in tolling American Can's backpay liability because the offer was conditional and did not provide for reinstatement.

■ Morris next argues that the district court erred in tolling American Can's backpay liability on September 8, 1987, because she reasonably refused to accept American Can's offer of reinstatement. Morris argues that at that time she did not believe American Can's assurances that it would protect her from further sexual harassment. Morris further argues that to return to her position in a sexually hostile environment would have resulted in her taking a "demeaning position" and that under *Ford Motor* she is not required to take a demeaning position. 458 U.S. at 231, 102 S.Ct. at 3065 ("the unemployed ... claimant need not go into another line of work, accept a demotion, or take a demean-

ing position ...."). We are persuaded, however, that the Court in referring to a demeaning position was referring to positions "not consonant with the employee's particular skills." *See id.* at 231 n. 16, 102 S.Ct. at 3066 n. 16. Here, American Can offered to reinstate Morris to her former position as a machinist. The position offered was not demeaning.

■ In light of the egregious conduct that occurred here, we sympathize with Morris's statement that she reasonably refused to accept American Can's offer of reinstatement. Nevertheless, a plaintiff's refusal of a reinstatement offer is measured by an objective standard: "Generally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement." *Fiedler,* 670 F.2d at 808. We have reviewed the correspondence between American Can and Morris regarding the terms of her reinstatement, as well as the testimony of company representatives and we are satisfied that this evidence shows that American Can was sincere in its claim that it was prepared to protect Morris from any further sexual harassment. We also view Morris's ultimate return to her position as evidence that the company was prepared to protect Morris from any further sexual harassment. Although we may have viewed the evidence differently, we cannot conclude that the district court clearly erred in tolling American Can's offer of backpay on September 8, 1987. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 4511–12, 84 L.Ed.2d 518 (1985).

## II.

■ Morris also complains about the court's calculation of backpay damages. Morris introduced in evidence the earnings statement for the time she did not work for the next most senior employee who had earned substantial overtime pay. Morris argued that because the company had an overtime equalization policy which allowed each employee an equal opportunity to earn overtime pay, this employee's earnings should be used as a benchmark for calcu-

lating her backpay damages. The district court, however, did not rely on that employee's wages in calculating Morris's lost wages. Instead, it credited the testimony of the custodian of records for American Can who testified that a different employee would be more comparable to Morris. 730 F.Supp. at 1494. The court concluded that there was no evidence that Morris actually earned discernible amounts of overtime before she resigned. *Id.*

We cannot conclude the district court clearly erred in calculating backpay damages. Testimony established that American Can's overtime equalization program resulted only in employees receiving an equal opportunity to earn overtime. The Vice President of Morris's union testified that no employee is required to work overtime and indeed, that Morris had declined to work overtime in the past. Thus, we are satisfied that the district court did not err in calculating backpay damages.

### III.

Finally, Morris appeals from her award of attorneys' fees. The district court awarded Morris $61,608.60 in attorneys' fees, and refused Morris's request to enhance the fee for the contingent nature of the representation and the resulting "risk of loss" borne by her attorney.

The Supreme Court addressed the question of enhancements in *Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*). In that case, a majority of the court reversed a 100 percent risk enhancement before it, and a plurality of four stated that contingency enhancements "should be reserved for exceptional cases." 483 U.S. at 728, 107 S.Ct. at 3087 (White, J., joined by Rehnquist, C.J., Powell, and Scalia, JJ.). Four justices in dissent argued that there should be an enhancement for risk. *Id.* at 735 and n. 1, 107 S.Ct. at 3091 and n. 1 (Blackmun, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.). Justice O'Connor agreed, and wrote in her controlling opinion: "Congress did not intend to foreclose consideration of contingency in setting a reasonable fee under fee-shifting provisions." *Id.* at 731, 107 S.Ct. at 3089 (O'Connor, J., concurring in part and concurring in judgment).

Justice O'Connor's opinion in *Delaware Valley II* is the current legal standard for awarding contingency enhancements. *See, e.g., Jackson v. Rheem Mfg. Co.,* 904 F.2d 15, 17 (8th Cir.1990); *Jenkins v. Missouri,* 838 F.2d 260, 267–68 (8th Cir.1988), *aff'd* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). *But see Dague v. City of Burlington,* 935 F.2d 1343, 1360 (2d Cir.1991) (whether and when a contingency enhancement is warranted are open issues for the Supreme Court to decide). Justice O'Connor instructed that a prevailing party is entitled to a contingency enhancement only on proof that the relevant market compensates for contingency cases as a class, rather than on proof of any particular risks peculiar to the case in question. 483 U.S. at 731, 107 S.Ct. at 3089. Second, Justice O'Connor agreed with the plurality that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id.* at 733, 107 S.Ct. at 3090 (quoting plurality opinion, 483 U.S. at 731, 107 S.Ct. at 3089).

■ Beyond the two-part test set forth above, Justice O'Connor also instructs a reviewing court to consider the reasonableness of the fee award. 483 U.S. at 732–33, 107 S.Ct. at 3089–90. As the Supreme Court recently reaffirmed, "reasonableness" is the standard by which a fee award is to be measured, and it is to be determined by a district court "in light of all of the circumstances" of a case. *Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989).

■ Morris has the burden of justifying her entitlement to an enhancement for the contingent nature of the litigation. *Jackson,* 904 F.2d at 17 (citing *Delaware Valley II,* 483 U.S. at 733–34, 107 S.Ct. at 3090–91), and the matter of risk enhancement is left to the informed discretion of the dis-

trict court. *Jackson*, 904 F.2d at 17 (citing *Delaware Valley II*, 483 U.S. at 728, 107 S.Ct. at 3087). We therefore review the district court's denial of Morris's request for risk enhancement under the abuse of discretion standard. *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir.1991).

The district court did not consider or decide whether the "relevant market" adds a premium for contingency for such cases treated as a class. Its order referred to "the risk of loss involved in representing plaintiff in this case," and that counsel's experience "aided him in deciding whether or not to accept this case." Slip. op at 18 (June 25, 1989). The district court thus looked only to the case before it, and did not look to the class of cases, as required by Justice O'Connor's controlling opinion in *Delaware Valley II.*

We are persuaded that the district court abused its discretion in concluding that Morris failed to establish that she would have faced substantial difficulties in retaining counsel absent risk enhancement. Although Morris is not required to show that she actually faced substantial difficulty in retaining counsel, *see, e.g., McKenzie v. Kennickell*, 875 F.2d 330, 337 (D.C.Cir. 1989), Morris did make such a showing. Morris presented uncontradicted evidence that she had trouble finding representation. She initially went to one attorney who declined to take her case, and because of the "high risk" of contingent fee civil rights litigation, referred her to the attorney who ultimately handled her case. Her own attorney submitted an affidavit stating that he was reluctant to get involved in the case because of "the inherent difficulty with such cases; the absence of funding for fees as the work progressed; the risk of nonpayment; the long wait for fees even if

successful; the press of other business; and the knowledge that the corporation would be represented by competent legal counsel who would require full litigation to obtain any yield for Ms. Morris." [2]

Furthermore, Morris established that absent a contingency enhancement, she would have encountered substantial difficulty in finding counsel. The contract for professional services between Morris and her attorney specifically provided that her attorney would receive any "bonus" available under federal law. Morris also presented undisputed evidence that attorneys in the St. Louis area are either reluctant or do not accept civil rights cases on a contingent fee basis. For example, one member of the St. Louis Bar testified by affidavit that he "turn[ed] away many contingency fee cases because the risks in such unpredictable cases are too great." Another attorney testified by affidavit that he had handled numerous civil rights cases, but despite a high success rate, now handles only a few selected cases because the cases were "less profitable" and "extremely risky." He explained: "It is difficult, both in terms of time and resources, to take on very much [civil rights litigation] that does not pay on a straight hourly bases [sic] where the most you can obtain in [sic] your hourly rate at the end of litigation."

Similarly, another attorney stated in his affidavit that he could "only afford to undertake a small number of [civil rights] cases at one given time", and that "[i]n the genre of civil rights litigation, employment discrimination cases against private corporate defendants are the least attractive cases from an economic standpoint." He further stated that "[o]nly a small number of attorneys in the metropolitan St. Louis

---

**2.** Indeed, the district court rejected American Can's arguments that Morris's counsel had improperly prolonged the litigation, or that offers of settlement should have limited additional time spent on the case. *Morris,* slip op. at 7–8 (June 25, 1989). The district court found that American Can characterized its 1987 unconditional offer of reinstatement as a limitation on the backpay that would be due plaintiff rather than a settlement offer, and that her seniority rights were not resolved until the court's judg-

ment was entered. *Id.* at 8. Further, the court concluded the "offers" were not offers of judgment as set forth in Fed.R.Civ.P. 68. *Id.* The court stated: "The Court does not find plaintiff's efforts to resolve the seniority issue, to address attorney's fees issues, and to gain input into the sexual harassment policy were unreasonable. Accordingly, this Court does not find the plaintiff's refusal of defendants' 1988 offers warrants a reduction in the number of hours for which compensation will be awarded." *Id.* at 8–9.

area are willing to undertake employment discrimination litigation," and that "many people ... are unable to find competent legal counsel because they cannot afford to pay hourly rates and local attorneys are unwilling to assume the risks of such cases on a traditional contingent fee basis."

One labor law attorney stated in his affidavit that "civil rights litigation is risky because of the extensive attorney-time required and the resources necessary to develop the cases." He went on to state: "[f]ew civil rights litigants can afford to pay attorneys fees [or] out-of-pocket expenses, [and that] [w]hen the cases are won the rewards are not commensurate with the risks." Similarly, another attorney who does take civil rights cases testified in her affidavit that she is "very careful in case selection." An attorney employed by the Missouri Protection and Advocacy Services whose responsibilities include assisting clients in obtaining legal representation in employment discrimination and other civil rights cases, stated that "there are very few attorneys in the St. Louis Metropolitan area who are willing to accept plaintiffs' employment discrimination and other civil rights cases." American Can did not file any affidavits to answer the evidence contained in the affidavits submitted by Morris. The evidence before the district court pointed in only one direction.

This court recently addressed the question of contingency enhancements in *Hendrickson*, 934 F.2d at 162–63. In that case, this court stated that contingency "enhancement is reserved for 'rare' and 'exceptional' cases," *id.* at 162, and that "to avoid double counting, ... the contingency of payment should not ordinarily be considered as independent grounds to enhance the lodestar."[3] *Id.* This court went on to reverse the district court's award of an enhanced fee for two reasons. First, because the court had granted the enhanced fee "based on risks unique to [the] particular case," and such risks had already been reflected in the lodestar amount. *Id.* at 163. Second, because the record did not establish that an enhancement for contingency was required in the relevant market. *Id.* Neither of these circumstances is present here. No argument was made that this case presented such factors as a novel issue of law requiring substantial attorney time. In addition, although the district court made no finding with respect to whether the relevant market adds a premium for contingency, Morris presented undisputed evidence that the St. Louis market generally compensates prevailing parties for assuming the risk of contingency cases at a rate in excess of their normal hourly rate. *Hendrickson*, therefore, does not control this case.

Morris presented affidavits from two attorneys stating that in contingent fee cases, attorneys in the St. Louis area understand that they will be paid anywhere from two to five times their normal hourly rate. Another attorney testified by affidavit that "... when I am successful in [plaintiff's contingency fee civil rights cases], my hourly rate should be at least doubled to compensate the high level of risk involved in accepting such cases", and that lawyers who take traditional contingent fee cases "understand that they should be paid for such services at rates three to five times their normal hourly rate."

Based on the evidence outlined above, we are persuaded that the district court abused its discretion in failing to make findings under the proper legal standards on the factual question whether Morris would have faced substantial difficulties finding representation without an adjustment for contingency. *Cf. Hendrickson*, at 934 F.2d at 163; *Jenkins*, 838 F.2d at 268. The district court failed to consider whether the relevant market compensates for contingency cases as a class, and looked only to the risk of loss involved in this case

---

**3.** We note that in stating that contingency enhancements are reserved for "rare" and "exceptional" cases, *Hendrickson* relied on the plurality, and not the controlling opinion of the *Delaware Valley II* Court. Nevertheless, we are satisfied that based on the evidence presented Morris met her burden of proof under *Delaware Valley II*, and therefore, this case qualifies as a "rare" and "exceptional" case.

and the decision of Morris's attorney to accept this case. Morris met her burden of producing facts sufficient to make a prima facie case that she was entitled to an enhanced fee award, and there was no factual showing to the contrary. Accordingly, we reverse and remand the enhanced fee question and direct the district court to make specific findings under the two factors set forth in Justice O'Connor's opinion in *Delaware Valley II,* and conduct an overall reasonableness determination as explained in *Delaware Valley II,* 483 U.S. at 732–33, 107 S.Ct. at 3089–90 and *Blanchard v. Bergeron,* 109 S.Ct. at 944. The district court, in its discretion, may take additional evidence before making its findings on remand.

We affirm the judgment of the district court with respect to the termination and calculation of backpay damages, but reverse and remand for further proceedings with respect to the award of attorneys' fees.