Stephanie C. BRAGALONE, Plaintiff,

v.

KONA COAST RESORT JOINT VEN-
TURE, a Hawaii Registered Joint Ven-
ture, Shell Management Hawaii, Inc., a
Hawaii Corporation, Dave Green, Chuck
Mastropoalo, John Does 1–5, Jane Does
1–5, and Doe Corporations 1–5, Defen-
dants.

Civ. No. 93–00625 HMF.

United States District Court,
D. Hawai'i.

Sept. 29, 1994.

Clayton C. Ikei, Honolulu, HI, for plaintiff.

Wayne S. Yoshigai, Richard M. Rand, Torkildson Katz Jossem Fonseca, Jaffe & Moore, Honolulu, HI, for defendants.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION TO TOLL BACKPAY AND DENYING DEFENDANTS' MOTION TO STRIKE*

FONG, District Judge.

### INTRODUCTION

On September 26, 1994 the court heard defendants Kona Coast Resort Joint Venture ("Joint Venture"), Shell Management Hawaii, Inc. ("Shell"), and Dave Green's ("Green") (collectively "defendants") motion for summary judgment on all counts of plaintiff's complaint. Defendants have also filed a motion to toll plaintiff's backpay claims as of February 12, 1992 and a motion to strike portions of affidavits attached to plaintiff's responsive pleadings. Defendant Chuck Mastropoalo ("Mastropoalo") joins in the defendants' motion. Having considered the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part defendants' motion.

## BACKGROUND

This case arises out of the employment of plaintiff Stephanie C. Bragalone ("Bragalone") by Shell as the assistant executive housekeeper and housekeeper at the Kona Coast Resort (the "resort"), a time-share resort complex located in Kailua–Kona, Hawaii.

Physically, phase I of the Resort consists of sixty-eight time-share units and forty-four privately owned condominium units. In 1991, the Kona Coast Resort Limited Partnership (the "Limited Partnership") began development of phase II consisting of the construction of an additional one hundred and ninety five time-share units.

The Joint Venture consists of Shell Realty Hawaii, Inc. and Coast Resort Corporation. Shell Realty Hawaii, Inc., Coast Resort Corporation, and Shell are separately incorporated companies, which maintain separate corporate books and hold their own board of directors' meetings. Perry Snyderman and Sheldon Ginsburg are the sole owners of all three companies, and Scott Church and Gretchen Huebner serve as president and corporate assistant secretary, respectively, for all three companies. The Joint Venture has contracted with Shell to manage the Resort.

Plaintiff was hired as a housekeeper by the Joint Venture on September 26, 1988. On March 31, 1989, plaintiff was promoted to the position of assistant executive housekeeper at the resort. At the time of her promotion, plaintiff entered into an at-will employment agreement with Shell.[1] After her promotion, she did not maintain an employment relationship with the Joint Venture.

As assistant executive housekeeper, plaintiff reported directly to Eileen Canionero ("Canionero"), the Resort's executive housekeeper. Plaintiff's duties included: 1) supervising all housekeepers; 2) assist in cleaning the guest rooms; 3) checking the cleanliness of all guest rooms; 3) reporting all physical problems in the rooms to the maintenance department; 4) following all Resort guidelines and rules; 5) reporting to her supervisor all guest and employee problems, mis-

haps or accidents immediately after they occurred; and 6) assisting the executive housekeeper as requested. Canionero was satisfied with plaintiff's work performance.

In February 1991, defendant Green became general manager of the Resort. Green was hired to make the Resort more operationally efficient and to prepare the Resort for the phase II expansion. Plaintiff claims that she believes that Green relied on defendant Mastropoalo, the head of the maintenance department, in making decisions affecting the operations of the Resort.

Green questioned the need for an assistant executive housekeeper at the Resort. In addition, Green was dissatisfied with plaintiff's work performance. Green noticed that plaintiff spent the majority of her work time in the housekeeping office counting linen. Plaintiff claims that she was asked to count the linens by Canionero to ensure that the number of linens returned from the laundry corresponded with the number sent for cleaning. Green claims that he told plaintiff that she should spend less time in the office counting linens and more time with the housekeepers in the guest rooms ensuring their cleanliness; despite this admonition, plaintiff continued to spend the bulk of her time in the office. Plaintiff claims that she was unaware of any negative comments about her work prior to June 1991.

In April 1991, Canionero informed Green that she would be resigning. Canionero also informed plaintiff that she would be resigning, though, per Canionero's request, plaintiff did not discuss the resignation with anyone else at the resort. Canionero resigned on May 21, 1991. Plaintiff asked Mastropoalo if she could be considered for the executive housekeeper on or about May 30, 1991.

Green claims that plaintiff was not even considered for the executive housekeeper position, due to his concerns with her work performance.

The job was initially offered to Tom Yanagawa ("Yanagawa"), an employee of the resort with twenty five years of managerial

1. A second, substantially identical, employment agreement was executed between plaintiff and

Shell on February 1, 1991.

experience though no housekeeping experience, in May of 1991 when he was on vacation. Yanagawa declined the job. Yanagawa signed a memorandum to this effect in August of 1991. Plaintiff claims that Yanagawa was not actually offered the job until August when the memo was signed; however, plaintiff has not offered any evidence to this effect. Yanagawa is twelve years older than plaintiff.

On May 31, 1991, Green announced the appointment of Wendy Ako ("Ako") as the new executive housekeeper for the Resort. At the time she was appointed, Ako was 31 years old and had been employed at the Resort since it opened and had also worked as an inspectress in the housekeeping department. Plaintiff claims that she believes that Ako was appointed executive housekeeper because she had a "personal relationship" with Mastropoalo.

Upon plaintiff's return from vacation leave on June 19, 1991, Green called a meeting in his office attended by plaintiff, Ako, Jerry Burgus, Mastropoalo and Kiji Hazelwood to discuss management changes in the housekeeping department. When plaintiff asked Green why she was not promoted to the position of executive housekeeper, Green stated something to the effect that "at our age, maybe we don't want the stress or headaches or responsibility of being a manager." At the time of the meeting, Green was sixty-three years old and believed that plaintiff was also around that age. In actuality, plaintiff was forty-seven years of age. Plaintiff also claims that Green said he wanted to "give young blood a chance;" Green denies making this statement.

During the period from June 19, 1991 to late August 1991, the work relationship between plaintiff and Ako deteriorated. Plaintiff claims that she tried to help Ako, but that these offers were rebuffed. Plaintiff also claims that during this period she was "verbally harassed" on "almost a daily basis" by Mastropoalo.[2] Ako claims that she did not receive any cooperation from plaintiff.

On July 15, 1991, a revised job description for the position of assistant housekeeper was given to plaintiff in an attempt to improve the work relationship between Ako and plaintiff. At this time, plaintiff served as an assistant executive housekeeper on two days a week and served as a housekeeper on the remaining three days.

Mastropoalo became the Resort's facilities manager in charge of the housekeeping, maintenance and landscaping departments in July 1991.

Additionally, during the period from June to August 1991, plaintiff failed to follow instructions on two occasions. Plaintiff was responsible for ordering paper products for the resort and to ensure that the Resort did not run out of paper products. Despite this responsibility and plaintiff's knowledge of a toilet paper shortage at the Resort, plaintiff failed to order toilet paper and the Resort ran out of toilet paper.

In August of 1991, plaintiff was asked to do a budget forecast of the housekeeping department's purchases from Hawaii Paper Products for the upcoming year. Plaintiff never completed the report.

On August 20, 1991, plaintiff filed a charge of discrimination against the Joint Venture with the Hawaii Civil Rights Commission. The charge alleged that plaintiff was subject to age discrimination when she was denied the promotion to executive housekeeper on June 19, 1991.

On August 29, 1991, plaintiff allowed the pool area to go uncleaned, although it was her responsibility to ensure that the area was cleaned.

On August 30, 1991, during a discussion between plaintiff and Ako, plaintiff started yelling at Ako in front of other housekeepers.

On the same day and as a result of the verbal altercation between plaintiff and Ako, Green offered plaintiff the opportunity to work as a housekeeper five days a week—a demotion—at her same hourly rate. Plaintiff accepted this position effective September

---

**2.** Mastropoalo appears to have verbally harassed many of the Resort's employees. He was eventu-

ally terminated by the resort in August 1993.

1991. The Resort eliminated the assistant executive housekeeper position.

Ako resigned as the executive housekeeper on December 26, 1991. Ginny Weshinsky ("Weshinsky") was made acting executive housekeeper.

On January 19, 1992, plaintiff reported an accident involving a fellow worker to Weshinsky. Plaintiff asked Weshinsky to file an incident report and give a copy to the employee involved. Without checking with Weshinsky, without reporting the accident to other managers, and without consulting with the employee involved, Bragalone documented the accident and sent a copy to Kiji Hazelwood, the Resort's personnel manager. This action was contrary to Resort procedures.

On January 26, 1992, Weshinsky spoke to plaintiff about the written disciplinary action being taken for her failure to follow proper procedures in reporting the accident. Weshinsky gave plaintiff a copy of the written disciplinary action for review. When Weshinsky asked plaintiff to return the written disciplinary action to her, plaintiff refused to return the document and left the meeting.

On January 27, 1992, plaintiff was terminated for insubordination at the January 26 meeting. However, upon investigation of this incident, the company determined that the termination was without merit. Accordingly, the termination was rescinded and plaintiff was reinstated to her housekeeping position effective January 27, 1992 so that she would not suffer loss in pay or seniority. Plaintiff was promised that if she returned to work, Mastropoalo would be instructed to deal with plaintiff only through the executive housekeeper. Mastropoalo received a written disciplinary action from Scott Church, Shell's president, which documented the rescission of plaintiff's termination and the instruction to welcome plaintiff to the workplace and not to take any retaliatory action against plaintiff. Plaintiff declined the offer of reinstatement and Shell accepted her voluntary resignation on February 12, 1992.

On June 5, 1992, plaintiff filed a charge of discrimination with the Hawaii Civil Rights Commission and the U.S. Equal Employment Opportunity Commission, alleging unlawful retaliation by the Joint Venture. Specifically, plaintiff alleged that she was subjected to work-environment harassment and terminated in retaliation for filing her age discrimination charge on August 20, 1991. The Hawaii Civil Rights Commission issued a right to sue letter on July 12, 1993.

On July 28, 1993, plaintiff filed her complaint in the Circuit Court of the Third Circuit, State of Hawaii. Plaintiff alleges that defendants discriminated against her on the basis of her age in violation of 29 U.S.C. § 621, et seq. and Haw.Rev.Stat. § 378–2(1)(A), (2). Specifically, plaintiff alleges that defendants engaged in age discrimination when they failed to promote her to the position of executive housekeeper in June 1991, and that she was harassed, demoted, and finally terminated in January 1992 in retaliation for filing an age discrimination claim. Plaintiff also alleges intentional infliction of emotional distress.

Defendants move for summary judgment on all of plaintiff's claims. Defendants claim that plaintiff has failed to make out a prima facia case of age discrimination, retaliation or intentional infliction of emotional distress. Defendants also argue that plaintiff has no claim against the Joint Venture, since she was not employed by the Joint Venture at the time of the alleged discrimination. Finally, defendants argue that plaintiff's claims for backpay must be tolled as of February 12, 1992—the day plaintiff rejected Shell's unconditional reinstatement offer. Additionally, in their reply, defendants have moved to strike portions of several affidavits attached to plaintiff's memorandum in opposition.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of

the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

If the moving party meets its burden, then the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *T.W. Elec.,* 809 F.2d at 630. The opposing party cannot stand on the pleadings nor simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for summary judgment reflects the standard governing a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.*

### DISCUSSION

I. *Motion for Summary Judgment*

A. Age Discrimination Claim

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), makes it unlawful "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." [3] This prohibition applies to individuals between the ages of forty and seventy. 29 U.S.C. § 631(a).

The shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under the ADEA. *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1420 (9th Cir.1990) (citations omitted). The plaintiff must first establish a prima facia case of discrimination. In the instant case, plaintiff is proceeding under a disparate treatment theory of age discrimination requiring that she show her employer treated some people less favorably than others because of their age. *Id.,* 902 F.2d at 1421, 1421 (9th Cir.1990). To establish a prima facia case of age discrimination under the disparate treatment theory plaintiff must show she 1) was a member of the protected class; 2) was performing her job in a satisfactory manner, 3) was subject to a adverse employment action; and 4) was replaced by a substantially younger employee with equal or inferior qualifications. *Id.,* 902 F.2d at 1421 (citations omitted). In the Ninth Circuit, the quantum of evidence necessary to establish a prima facia case that survives a motion for summary judgment is "very little." *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991) (citations omitted); *see also Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

Establishment of a prima facia case operates to shift the burden to the employer to produce evidence that it had a legitimate, nondiscriminatory reason for the employment decision. *Rose,* 902 F.2d at 1420 (citations omitted).

If the employer carries this burden of production, to survive a motion for summary judgment, plaintiff must raise a genu-

---

**3.** The mirror provision under Hawaii law makes it illegal "for any employer to refuse to hire or employ or to bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment" solely on the basis of age. Haw.Rev.Stat. § 378–2(1)(A).

ine factual issue as to whether the articulated reason was pretextual. *Sischo–Nownejad,* 934 F.2d at 1110 (citations omitted). However, "[e]ven if the defendant articulates a legitimate, nondiscriminatory reason for the challenged employment decision, thus shifting the burden to the plaintiff to prove the articulated reason is pretextual, summary judgment is normally inappropriate." *Id.,* 934 F.2d at 1111. "When a plaintiff has established a prima facia inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Id.* (emphasis in the original) (citations omitted). "Specifically, in evaluating whether the defendant's articulated reason is pretextual, the trier of fact must, at a minimum, consider the same evidence that the plaintiff introduced to establish her prima facia case." *Id.* (citations omitted). Such evidence will almost always create a genuine issue of material fact as to the legitimacy of the employer's proffered nondiscriminatory reason, making summary judgment inappropriate.[4] *Id.* In *Sischo–Nownejad,* discriminatory comments made at the time that plaintiff was subject to an adverse employment decision raised an inference of discriminatory intent preventing a grant of summary judgment even though the employer offered a nondiscriminatory reason for that decision.

The Ninth Circuit has stated that the holding in *Sischo–Nownejad* was not intended to prevent the summary disposition of meritless suits. *See Federal Deposit Ins. Corp. v. Henderson,* 940 F.2d 465, 473 n. 16 (9th Cir.1991). In *Henderson,* a stray, arguably discriminatory comment[5] was insufficient to raise an inference of discrimination sufficient to withstand a motion for summary judgment when valid, uncontested economic reasons were proffered for the decision. *Henderson,* 940 F.2d at 473. In addition, in *Wallis* the Ninth Circuit held that if an age discrimination plaintiff's prima facia case is based merely on a *McDonnell Douglas* presumption,[6] the plaintiff must produce specific, substantial evidence of pretext to avoid summary judgment. *Wallis,* 26 F.3d at 889–890. In *Wallis,* apart from being terminated and being a member of a protected class, the plaintiff offered no direct, circumstantial, or statistical evidence of age discrimination. *Id.,* 26 F.3d at 892. However, the Ninth Circuit has not criticized the *Sischo–Nownejad* holding that permits a plaintiff to use, in an effort to defeat summary judgment, the same direct evidence of discriminatory intent to rebut defendant's offer of a nondiscriminatory reason for the employment decision as was used to establish a prima facia case.

■ The instant case presents a difficult determination of whether or not plaintiff has presented sufficient evidence to survive a motion for summary judgment on her age discrimination claim under Ninth Circuit law. Plaintiff has presented sufficient evidence to establish a prima facia case. Plaintiff is a member of a protected class—she was forty-seven when she was denied the position of executive housekeeper. Through the testimony of Canionero, plaintiff has presented evidence that she was performing her job in a satisfactory manner, although this fact is disputed by defendants in their own testimony. Plaintiff was denied the executive house-

---

4. The *Sischo–Nownejad* decision is a substantial departure from earlier Ninth Circuit law and appears to ease the plaintiff's burden on summary judgment. *See e.g. Rose v. Wells Fargo & Co.,* 902 F.2d 1417; *Merrick v. Farmers Ins. Group,* 892 F.2d 1434 (9th Cir.1990).

5. The discriminatory comment consisted of the remark "[w]ho's going to bank with you downtown? After all you are a minority bank" made by the Supervisor of Banking for the State of Washington while discussing the possibility of permitting a minority owned bank to open another branch.

6. In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court held that evidence of the following raises a rebuttable presumption of unlawful employment discrimination even without direct evidence of discriminatory intent: 1) plaintiff belongs to a protected class; 2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; 3) despite plaintiff's qualifications, plaintiff was rejected; 4) after being rejected, the position remained open and the employer continued to seek applications from persons of complainant's qualifications. *Id.,* 411 U.S. at 802, 93 S.Ct. at 1824.

keeper position, which was awarded to Ako, a younger woman whom, according to plaintiff's witnesses, had equal or inferior qualifications. Again, Ako's qualifications are disputed by the parties. Moreover, unlike the plaintiff in *Wallis,* plaintiff has presented direct evidence of discriminatory intent and is not merely relying on a *McDonnell Douglas* presumption to establish her prima facia case. Specifically, when asked why she was not promoted to the position of executive housekeeper, Green responded that "at our age, maybe we don't want the stress or headaches or responsibility of being a manager" and that he wanted to give "young blood" a chance.[7] In addition, unlike the plaintiff in *Henderson,* plaintiff has presented evidence of more than one stray, arguably discriminatory comment to establish discriminatory intent.

■ The burden then shifts to defendants to present a legitimate, nondiscriminatory reason for the employment action. Defendants have presented testimony that plaintiff was not offered the executive housekeeper position because she was not qualified, as she was too sedentary and did not possess the active attitude necessary to adequately perform the duties of an executive housekeeper.

■ At this point, plaintiff is required to show that there is a genuine issue of material fact as to whether the employer's proffered non-discriminatory justification for the employment decision is a pretext. To this end, the court is entitled to consider the same direct evidence of discriminatory intent as was utilized to establish the plaintiff's prima facia case. Namely, the court must consider Green's comments in determining whether or not plaintiff has raised a triable question of fact on the pretext issue.

The court finds that plaintiff has presented sufficient evidence to survive a motion of summary judgment. When asked why she was not promoted, Green responded with a comment about plaintiff's age. Under *Sischo–Nownejad,* such a response raises a genuine issue of material fact as to whether defendants' claims of plaintiff's poor work performance are a mere pretext for an em-

ployment decision unlawfully based on plaintiff's age. Green claims that the age comments were meant to spare plaintiff embarrassment by not raising plaintiff's poor work performance in front of other employees. The validity of this justification for Green's comments must be left to a trier of fact. Accordingly, the court DENIES defendants' motion for summary judgment on plaintiff's age discrimination claim.

### B. Retaliation Claim

■ Proof of a prima facia case of retaliation requires a showing that: 1) plaintiff was engaged in a protected activity; 2) plaintiff was thereafter subjected by his employer to an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action. *Wallis,* 26 F.3d at 891 (citations omitted).

■ Defendants argue that plaintiff has failed, as a matter of law, to establish a causal link between her claims of retaliation and the filing of her discrimination claim on August 20, 1991. To the extend that plaintiff is claiming Mastropoalo's verbal harassment of her beginning in June and continuing through August was in retaliation for engaging in protected activity, defendants are correct as Mastropoalo's harassment began before plaintiff filed her discrimination claim. *See Washington v. Garrett,* 10 F.3d 1421, 1435 (9th Cir.1994) (in order to maintain a retaliation claim, protected activity must occur before the alleged retaliation). However, plaintiff was demoted—on August 30, 1991—and terminated—on January 27, 1992—after she filed her age discrimination claim. As to both these employment actions, plaintiff has raised a prima facia case of retaliation.

The basis for these decisions—whether they were in retaliation for plaintiff engaging in protected activity or based on legitimate business reasons—is a question of fact. Specifically, the parties dispute the circumstances surrounding plaintiff's demotion and termination—for example, whether Ako was antagonistic towards Bragalone, or visa versa. Whether plaintiff was demoted or fired due to her insubordination or incompetence

---

7. Whether or not this second statement was   made is a disputed factual issue.

is a question for the trier of fact. Accordingly, the court DENIES defendants' motion for summary judgment on plaintiff's retaliation claim.

### C. Plaintiff's Claims Against the Joint Venture

■ The Joint Venture moves for summary judgment claiming that it is an improper party to this action because it had no employment relationship with plaintiff. At the hearing, plaintiff stated that she did not oppose dismissal of the joint Venture from this action.

Plaintiff was not an employee of the Joint Venture at any time relevant to this lawsuit. Although she was initially hired by the Joint Venture, she became an employee of Shell on March 31, 1989, prior to the events that give rise to plaintiff's discrimination claims. Moreover, it is undisputed that Shell and the companies comprising the Joint Venture are separately incorporated, independent companies. Accordingly, since the Joint Venture was not plaintiff's employer, it is entitled to summary judgment. *See America West Airlines, Inc. v. GPA Group, Ltd. et al.,* 877 F.2d 793 (9th Cir.1989). The court GRANTS the Joint Venture's motion for summary judgment on all counts.

### D. Intentional Infliction of Emotional Distress Claim

Defendants argue that Hawaii's Workers' Compensation Law, Haw.Rev.Stat. § 386–1 et seq. (the "Statute"), provides an exclusive remedy for claims by employees suffering injuries arising out of and in the course of employment, including claims of intentional infliction of emotional distress.

■ Defendants are correct in asserting that plaintiff's claims for intentional infliction of emotional distress which are the result of her employment are barred except when brought under the Statute. *See Marshall v. University of Hawai'i,* 9 Haw.App. 21, 28, 821 P.2d 937 (1991); *Courtney v. Canyon Television & Appliance Rental,* 899

F.2d 845, 851 (9th Cir.1990); *Morishige v. Spencecliff Corp.,* 720 F.Supp. 829, 837 (D.Haw.1989).[8] However, any claims brought against her supervisors individually are not preempted. *See Morishige,* 720 F.Supp at 837.

■ Plaintiff claims that Mastropoalo's comments and harassment, made during the course of her employment with Shell and "condoned and permitted by his supervisors and employer," caused her emotional distress. Specifically plaintiff claims Mastropoalo 1) interrupted her whenever she spoke; 2) yelled at plaintiff; 3) changed his instructions to plaintiff; 4) told plaintiff she could quit if she was unhappy; 5) gave plaintiff conflicting work instructions; and 6) told plaintiff not to question his or Ako's actions. *See* Bragalone Deposition at V:81–84. Whether or not these allegations comprise a personal claim against Mastropoalo or a claim against Mastropoalo acting pursuant to and within the scope of his employment is a difficult question. However, the court need not make that determination since even if plaintiff's claim is not preempted, plaintiff's intentional infliction of emotional distress claim is insufficient as a matter of law.

■ Under Hawaii law, to defeat summary judgment on an emotional distress claim, plaintiff must show that defendants' actions were "without just cause or excuse and beyond the bounds of decency and extreme and outrageous." *Chedester v. Stecker,* 64 Haw. 464, 468, 643 P.2d 532 (1982); *Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991, 996 (D.Haw.1988) (to sustain an emotional distress claim in an employment discrimination claim, employer must engage in some conduct which goes beyond merely firing an employee for what are seen as unfair reasons); *see also Candelore v. Clark County Sanitation Dist.,* 975 F.2d 588, 591 (9th Cir.1992) (Nevada law) (citing *Restatement (Second) of Torts* § 46 cmt.d (1965)) ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" insufficient for an intentional infliction of emotional distress claim).

---

8. The court finds this a curious conclusion as § 386–5 of the Statute concerning exclusivity of remedies specifically provides that civil actions

for claims of "infliction of emotional distress" may be brought independent of any claims under the Statute. Haw.Rev.Stat. § 386–5.

Mastropoalo's comments, while certainly distasteful, do not rise to the level of outrageousness necessary to maintain plaintiff's claim under Hawaii law. Accordingly, the court GRANTS defendants' motion for summary judgment on plaintiff's intentional infliction of emotional distress claim.

## II. *Motion to Toll Backpay*

■ Defendants move to toll plaintiff's backpay claims as of February 12, 1992, the day plaintiff declined defendants' unconditional offer of reinstatement. Defendants argue that tolling is required under the principle of mitigation of damages.

■ An ADEA plaintiff must attempt to mitigate damages by exercising reasonable care and diligence in seeking reemployment after termination. *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1345 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). The Supreme Court has held that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential back pay liability." *Ford Motor Co. v. EEOC,* 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982); *see also Morris v. American Nat. Can Corp.,* 952 F.2d 200, 202 (8th Cir.1991). Although the rule in *Ford Motor Co.* was fashioned in the Title VII context, it applies with equal force under the ADEA because it is consistent with the ADEA policy to encourage "defendants promptly make curative, unconditional job offers to ... [ADEA] claimants, thereby bringing defendants into 'voluntary compliance' and ending discrimination far more quickly than could litigation proceedings at its often ponderous pace." *Holmes v. Marriott Corp.,* 831 F.Supp. 691, 709 (S.D.Iowa 1993) (citing *Ford Motor Co.,* 458 U.S. at 228, 102 S.Ct. at 3063–64); *see also Giandonato v. Sybron Corp,* 804 F.2d 120, 123–25 (10th Cir.1986).

The reinstatement offer made to plaintiff stated, in relevant part:

Ms. Bragalone has been reinstated to her position as housekeeper effective January 27, 1992. The company has rescinded her termination report of January 27, 1992 and has expunged any record of the termi-

nation from her personnel file. Due to Ms. Bragalone's perceived conflict with Chuck Mastropoalo, the Company has reiterated its open door policy to all employees: all employees, including Ms. Bragalone, may contact the Personnel Manager about any work-related concern. Also, Mr. Mastropoalo has been instructed to welcome Ms. Bragalone to the workplace and not to take any retaliatory action or make any statements that may be construed as retaliation....

The company hopes that Ms. Bragalone will return to active employment shortly and continue to be a valued and productive employee of the Kona Coast Resort.

*See* February 5, 1992 letter from Wayne S. Yoshigai to Gerald A. Garcia. In addition, in a letter dated the following day, defendants stated:

Please know that if Ms. Bragalone returns to active employment at the Resort, Mr. Church will further instruct Mr. Mastropoalo that he must deal with Ms. Bragaone only through the executive housekeeper.

*See* February 6, 1992 letter from Wayne Yoshigai to Gerald Garcia.

This letter, which offered to reinstate plaintiff to her former position at the same rate of pay and with the same benefits, including seniority, as well as offering plaintiff assurances that she would be protected from any potentially harassing conduct, was an unconditional offer of reinstatement. *See e.g. Clarke v. Frank,* 960 F.2d 1146, 1151 (2nd Cir.1992). Plaintiff has failed to generate a material question of fact as to the unconditional nature of this offer, and the court finds that there is simply nothing about the offer of reinstatement that a trier of fact could find would be anything but unconditional. Plaintiff's bald assertion that the offer was somehow conditional due to Mastropoalo's prior, allegedly harassing conduct is without factual support—the letter specifically states that Mastropoalo was instructed to welcome plaintiff with "open arms" in an effort to ameliorate and avoid the perpetuation of any past friction between plaintiff and Mastropoalo.

The offer of reinstatement was rejected by Bragalone on February 12, 1992. The stated reasons for her rejection were that:

[Bragalone] feels that she did not leave work voluntarily. She feels that the termination she received was one of a continuing number of actions of harassment and retaliation that she received in the months since she filed her charge of discrimination with the Civil Rights Commission. She feels it was too stressful to continue in that position, given under the circumstances.

*See* February 19, 1992 letter from Gerald A. Garcia to Wayne S. Yoshigai.

■■■■ However, mere rejection of an unconditional offer of reinstatement will not toll backpay liability if plaintiff has a valid reason for that refusal. *See Ford Motor Co.,* 458 U.S. at 232–34, 102 S.Ct. at 3065–67; *Lewis v. Federal Prison Industries, Inc.,* 953 F.2d 1277, 1279 (11th Cir.1992); *Smalldridge v. Commissioner of Internal Revenue,* 804 F.2d 125 (10th Cir.1986); *Taylor v. Teletype Corp.,* 648 F.2d 1129, 1139 (8th Cir.1981), *cert. denied* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981) (citations omitted). A plaintiff's refusal of a reinstatement offer is measured by an objective standard—namely, whether a reasonable person would refuse the offer of reinstatement. *Morris v. American Nat. Can Corp.,* 952 F.2d 200, 203 (8th Cir.1991) (citing *Fiedler v. Indianhead Truck Line, Inc.,* 670 F.2d 806, 808 (8th Cir.1982)).

■■■ Plaintiff argues that her rejection of Shell's offer of reinstatement was reasonable because it would require her to return to a stressful, allegedly harassing work environment. To support her argument, plaintiff relies on the Eleventh Circuit's decision in *Lewis.* The plaintiff in *Lewis* established a case of constructive discharge under the ADEA against his employer. In *Lewis,* the Eleventh Circuit found that the plaintiff's rejection of an unconditional offer of reinstatement was reasonable when the discriminatory work environment caused him to develop "acute agitated depression." This medical condition was diagnosed by a physician and required medication and treatment by a psychiatrist.

By contrast, in the instant case, while plaintiff claims that the work environment at the Resort was stressful, and that this stress lead her to seek "medical attention," she has presented absolutely no evidence that she is receiving medical treatment for her alleged condition. She has no reports from a medical professional, no pharmaceutical prescriptions for the alleged condition, or any other evidence that she has an actual medical condition that would make return to work physically or psychologically threatening to her health. Indeed, plaintiff has not even presented any admissible evidence that Mastropoalo's alleged harassment of her was age related. Plaintiff claims that Mastropoalo yelled at her and treated her disrespectfully; however, while the court appreciates that such behavior can make for a very unpleasant work environment, it is not proscribed by the ADEA. As a result, the holding in *Lewis* is inapplicable to the facts of the present case.

Moreover, the Eighth Circuit has found a rejection of an unconditional offer of reinstatement unreasonable under conditions very similar to those alleged by plaintiff in the present case. *Morris,* 952 F.2d at 202–03. In *Morris,* the defendant offered plaintiff an unconditional offer of reinstatement which included assurances that she would be protected from any future sexual harassment. The *Morris* plaintiff argued that the district court's tolling of backpay liability based on the rejection of this offer was in error since returning to work would require the plaintiff to return to the allegedly harassing environment. While the court sympathized with the *Morris* plaintiff's concerns, the court found that her rejection of the reinstatement offer was unreasonable in light of the *Morris* defendant's assurances that it was prepared to protect the plaintiff from any future harassment. *Id,* 952 F.2d at 203.

Similarly, in Shell's offer of reinstatement, Mastropoalo was reprimanded for his conduct towards plaintiff and Shell assured plaintiff that it had a complaint mechanism in place to prevent any future, potential harassment of plaintiff. Plaintiff has presented no evidence to create a triable issue of fact that Shell's assurances were either insufficient to

protect plaintiff, or in bad faith. Nor has plaintiff presented any other evidence that would support a finding by a trier of fact that her rejection of Shell's reinstatement offer was reasonable.

At the hearing, plaintiff argued that her rejection was reasonable because Mastropoalo was eventually fired by Shell for engaging in discriminatory and harassing behavior against other employees. However, plaintiff's decision must be viewed in light of the facts that existed at the time of the decision. At the time she made her decision to reject the unconditional offer of reinstatement, plaintiff was assured by defendants that she would be protected from any further harassment by Mastropoalo. Indeed, by terminating Mastropoalo, Shell indicated its willingness to protect its employees from harassment should Mastropoalo be unwilling to comply with Shell's admonitions. Accordingly, the court GRANTS defendants' motion to toll back pay, and plaintiff's backpay claims are tolled as of February 12, 1992, the date she rejected Shell's unconditional reinstatement offer.

III. *Motion to Strike*

■■■ Defendants, in their Reply Memorandum, move the court to strike portions of the affidavits attached to Plaintiff's Memorandum in Opposition pursuant to Fed. R.Civ.P. 56(e). Specifically, defendants seek to strike portions of plaintiff's, Canionero's, John Moniz's, Theresa Moniz's, Fiette Farias's, and Caroline Catereha's affidavits as containing inadmissible hearsay, speculative and conclusory statements.

Fed.R.Civ.P. 56(e) requires that supporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible as evidence, and shall show that the affiant is competent to testify to the matter stated therein. Local Rule 220-6 allows the court to disregard affidavits and declarations that are not in compliance with Rule 56(e).

When plaintiff submitted her opposition memorandum and supporting affidavits, the court took note of the fact that several of the statements made in those affidavits did not comply with Rule 56(e). The court, while cognizant of Rule 56(e) and Local Rule 220-6, chose instead to ignore and disregard the offending portions of plaintiff's affidavits. While the court acknowledges defendants' effort to bring to light the problems with plaintiff's affidavits, defendants' motion to strike is moot as the court had already disregarded the non-complying portions of plaintiff's affidavits. Accordingly, defendants' motion to strike is DENIED as moot.

*CONCLUSION*

For the reasons given, the court GRANTS in part and DENIES in part defendants' motion for summary judgment. Defendants' motion for summary judgment on plaintiff's age discrimination and retaliation claims is DENIED, defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress is GRANTED, and the Joint Venture's motion for summary judgment is GRANTED on all counts. Defendants' motion to toll backpay as of February 12, 1992 is GRANTED. Defendants' motion to strike is DENIED as moot.

IT IS SO ORDERED.