**Thomas Neil HENDRICKSON, Jr.; Bertha M. Foy, a minor, by her next friend, Blake Parker; and Sessions Harper, a minor, by his next friend, Blake Harper; individually and on behalf of all others similarly situated, Appellees,**

v.

**Terry E. BRANSTAD, individually and in his capacity as Governor of the State of Iowa; Richard R. Ramsey, individually and in his capacity as Executive Director of the Iowa Criminal and Juvenile Justice Planning Agency, Appellants.**

No. 90–1644.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1990.

Decided May 23, 1991.

Gordon Allen, Des Moines, Iowa, for appellants.

Harry F. Swanger, St. Louis, Mo., for appellees.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

BEAM, Circuit Judge.

Terry E. Branstad, Governor of Iowa, and Richard R. Ramsey, Executive Director of the Iowa Criminal and Juvenile Justice Planning Agency, appeal an order of the district court awarding attorney's fees to Hendrickson[1] as a prevailing party under 42 U.S.C. § 1988 (1990). The district court found that a lawsuit filed by Hendrickson successfully enforced Iowa's compliance with the Juvenile Justice and Delinquency Prevention Act. Branstad and Ramsey[2] raise two issues on appeal, Hendrickson's prevailing party status and the proper amount of attorney's fees awarded to Hendrickson. We affirm in part, but reverse the district court's twenty-five percent fee enhancement.

## I. BACKGROUND

Hendrickson was, at the time of this lawsuit, incarcerated in an adult detention facility in Iowa. He commenced this action alleging, inter alia, violations of statutory rights under the Juvenile Justice and Delinquency Prevention Act. *See* 42 U.S.C. §§ 5601–5778 (1990). Under the Juvenile Justice Act, state and local governments may receive federal grants to improve the state's juvenile justice program. Participating states are required to comply with the requirements of the Act, including the requirement that juveniles not be confined in adult detention facilities. Failure to comply results in a loss of the federal funds, unless the state has substantially complied by removing at least seventy-five percent of juveniles from adult facilities and has demonstrated a commitment through legislative or executive action to achieve full compliance within a certain number of years. Iowa received funds under the Act to improve its juvenile justice system.

Hendrickson's original complaint, filed on February 2, 1984, named the Sheriff and Board of Supervisors of Webster County, Iowa, as defendants. After some litigation, Hendrickson amended the complaint, on February 18, 1986, to join state officials Branstad and Ramsey as defendants. According to Hendrickson, the state and county officials violated the Act by detaining an impermissible number of juveniles in adult detention facilities. Hendrickson contended that the Juvenile Justice Act created rights enforceable by him, and that he could maintain a private cause of action under 42 U.S.C. § 1983 against the officials. Hendrickson sought an injunction prohibiting the officials from confining juveniles in adult facilities, and monetary damages and attorney's fees for violating the Act.

The district court determined that Hendrickson could assert a section 1983 action to redress violations of the Juvenile Justice Act.[3] In addition, the court enjoined the officials from violating the Act, and ordered the state officials to submit "a plan for achieving a combination of policy changes and reductions in the rate of juvenile jailing which would place the state in compliance with the [Act]." *Hendrickson v. Griggs*, 672 F.Supp. 1126, 1144–45 (N.D. Iowa 1987). The state officials appealed the order, but the appeal was dismissed because the order was interlocutory. *Hendrickson v. Griggs*, 856 F.2d 1041, 1045 (8th Cir.1988).

On May 4, 1987, the state officials filed a plan for reducing the number of juveniles in adult facilities, and supplemented the plan on May 21, 1987, with new Iowa legislation. The legislation eliminated the practice of detaining juveniles in adult facilities and brought Iowa into compliance with the Juvenile Justice Act. The parties jointly

---

**1.** Hendrickson is a member in a class of juveniles who were, at the time of their lawsuit, held in adult detention facilities in Iowa. We refer to only Hendrickson, but such references include the entire class.

**2.** Jack Crandall has succeeded Richard R. Ramsey as director of Iowa's Juvenile Justice Agency, and Crandall has replaced Ramsey under Fed.R.Civ.P. 25(d)(1) respecting appellees'

claims against Ramsey in his official capacity. *See Hendrickson v. Griggs*, 856 F.2d 1041, 1042 & n. 3 (8th Cir.1988).

**3.** The state officials have not appealed the finding that a private cause of action exists under the Juvenile Justice Act. Therefore, we express no view as to whether or not there exists a private cause of action under the Act.

agreed that Iowa was in compliance with the Act, and Hendrickson's lawsuit was dismissed as moot.

Hendrickson filed a request for attorney's fees as a prevailing party under 42 U.S.C. § 1988, which request is the subject of this appeal. The district court determined that Hendrickson was a prevailing party under section 1988. *See Hendrickson v. Branstad*, 740 F.Supp. 636, 640 (N.D. Iowa 1990). The court reasoned that Hendrickson's lawsuit was a catalyst in generating Iowa's compliance with the Juvenile Justice Act. The court ordered the state officials to pay their allocable share of Hendrickson's attorney's fees, which the court calculated at $276,163.09. Although the state officials had not been original parties to the case, the court held them responsible for ninety percent of the total fees.[4] The court reasoned that ninety percent was appropriate because state policy was at issue since the commencement of the case, the claims against the state and county officials were interrelated, and Hendrickson devoted only ten percent of his time seeking relief solely from county officials. The fee amount also included a twenty-five percent fee enhancement. The court reasoned that an enhancement was appropriate because this case was a "rare" and "exceptional" case in which the extraordinary results, as well as the contingent nature of compensation, justified enhancement.

## II. DISCUSSION

### A. Prevailing Party Status

The state officials assert that Hendrickson was not a prevailing party for two reasons. First, the officials argue that there was no causal connection between Hendrickson's lawsuit and Iowa's legislation bringing the state into compliance with the Juvenile Justice Act. Second, the officials assert that Hendrickson cannot be a prevailing party because he failed to succeed on two of his causes of action. Neither argument provides a basis to conclude that Hendrickson was not a prevailing party.

To determine whether a lawsuit was a catalyst which compelled a certain result, the suit must be a "necessary and important factor in achieving the improvements," and the result must be legally required as opposed to gratuitous or voluntary. *United Handicapped Fed'n v. Andre*, 622 F.2d 342, 346 (8th Cir.1980). Hendrickson's lawsuit satisfies both criteria. First, the lawsuit was a necessary element in achieving Iowa's compliance. Prior to Hendrickson's lawsuit, Iowa was not complying with the Act, and legislative action requiring compliance was not forthcoming. Indeed, legislative action complying with the Act did not occur until at least three years after commencement of Hendrickson's lawsuit, when necessitated by court order. Second, Iowa's compliance with the Juvenile Justice Act was not voluntary. The state's compliance was required by the district court's order that the state officials submit a plan to bring the state into compliance with the Act.

Furthermore, Hendrickson does not have to succeed on every issue raised to be considered a prevailing party. Rather, parties " 'may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). *Accord Texas State Teachers Ass'n v. Garland Indep. School Dist.*, 489 U.S. 782, 790–92, 109 S.Ct. 1486, 1492–93, 103 L.Ed.2d 866 (1989) (prevailing party status obtained by succeeding on any significant issue which achieves some of the benefit sought). Hendrickson succeeded on a significant issue of his lawsuit, Iowa's compliance with the Juvenile Justice Act and the

---

**4.** The court held the county officials responsible for ten percent of the fees, but determined that the county's allocable share had previously been paid pursuant to the terms of a Compromise and Settlement Agreement between the county and appellees. The county officials were dismissed from the lawsuit on March 22, 1989, by the court's approval of the Agreement. *See Hendrickson*, 740 F.Supp. at 648 & n. 21.

removal of juveniles from adult detention facilities. Hendrickson specifically sought removal of juveniles from adult facilities based on several theories of relief, including violation of the Juvenile Justice Act, imposition of cruel and unusual punishment under the eighth amendment, and violation of due process under the fourteenth amendment. Although the district court did not address every theory, Hendrickson's lawsuit successfully enforced Iowa's compliance with the Act and virtually eliminated the detention of juveniles in adult facilities. Thus, Hendrickson is a prevailing party entitled to an award of attorney's fees under section 1988.

### B. Attorney's Fees

■ The officials raise three challenges to the amount of fees awarded to Hendrickson. The officials argue that the district court's twenty-five percent fee enhancement was not justified, that they should not be liable for ninety percent of the fees, and that the hourly rate of one of Hendrickson's three attorneys is too high. The district court's determination respecting fees is reversible only if the court abused its discretion. *See Jenkins v. Missouri,* 838 F.2d 260, 267 (8th Cir.1988). The reasons given by the district court support the imposition of fees, except with respect to the twenty-five percent enhancement.

■ We turn first to the twenty-five percent fee enhancement. The district court granted an enhancement based on "the extraordinary results achieved" and "the high risk factor and contingent nature of the case." *Hendrickson,* 740 F.Supp. at 643–44. The officials argue that an enhancement was not justified on either basis.

Under section 1988, counsel is entitled to a "reasonable" fee. *See* 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee"). A reasonable fee is "one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'" *Blum v. Stenson,* 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976

U.S.Code Cong. & Admin.News 5908, 5913). The lodestar award (the product of reasonable hours multiplied by a reasonable rate) is presumptively a reasonable fee, and most factors relevant to determining the amount of a fee are subsumed within the lodestar. For instance, there is a "strong presumption" that "the 'results obtained' from the litigation" are reflected in the time and rate calculations of the lodestar figure. *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*) (quoting *Blum,* 465 U.S. at 898, 900, 104 S.Ct. at 1548, 1549). There is a similar presumption that the contingent nature of payment is reflected in the lodestar. *Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,* 483 U.S. 711, 727–28, 107 S.Ct. 3078, 3087–88, 97 L.Ed.2d 585 (1987) (*Delaware Valley II*). Thus, to avoid double counting, the results obtained and the contingency of payment should not ordinarily be considered as independent grounds to enhance the lodestar. Although an enhancement is permissible based on these factors, enhancement is reserved for "rare" and "exceptional" cases, and must be supported by specific evidence in the record and detailed findings by the lower court. *Id.; Delaware Valley I,* 478 U.S. at 565, 106 S.Ct. at 3098. The applicant bears the burden of demonstrating that the lodestar amount must be enhanced to constitute a reasonable fee. *Blum,* 465 U.S. at 898, 104 S.Ct. at 1548.

In light of these standards, an enhancement was not justified in this case. The record does not contain specific evidence establishing that an enhancement based on exceptional results was necessary to provide counsel with a reasonable fee. On the contrary, the record in this case establishes that the lodestar amount provided a reasonable fee to Hendrickson's three attorneys.

First, affidavits submitted by Hendrickson demonstrate that the element of results was reflected in the time and rate calculations of the lodestar. The affidavits establish that a large number of hours were billed by Hendrickson's attorneys in connection with this case, and that the

hours were necessary in light of the complexity of the case and the absence of court precedent. *See* Appendix at 88 (affidavit of Harry F. Swanger), 107 (affidavit of John R. Bird), 116 (affidavit of Mark I. Soler), 119 (affidavit of Thomas A. Connelly); Supplemental Appendix at 17 (affidavit of David Ferleger), 34 (affidavit of Frank Susman). Because of the complex nature of the case and the absence of court precedent, counsel expended greater time and effort to successfully resolve this case, and the large number of billable hours was due in part to the difficulty counsel experienced in preparing for and obtaining a successful result. Consequently, counsel's lodestar figure directly reflects the time needed to successfully resolve this case, and an enhancement of the lodestar based on the results would constitute double counting.

Second, counsel were awarded hourly rates comparable to their skill and experience. There is no indication that the lodestar amount awarded in this case was below awards made in similar cases involving an equal quality of performance, or that the quality of counsel's performance surpassed that which would be expected in light of the hourly rate charged.

Third, the district court's reliance on the public importance of the case in granting an enhancement based on exceptional results was misplaced. The Supreme Court has held that "the *number* of persons benefited" is not a consideration in calculating fees under section 1988. *Blum*, 465 U.S. at 900 n. 16, 104 S.Ct. at 1550 n. 16.

Similarly, we do not believe an enhancement was justified in this case based on the contingent nature of compensation. Justice O'Connor's concurring opinion in *Delaware Valley II* provided a majority for the holding that a contingency enhancement may be allowed in certain circumstances. The opinion establishes the standard to be used to determine when contingency enhancements are justified. To avoid widely divergent compensation for the risk of non-payment, an enhancement must not be based on risks associated with a particular case. Instead, courts should view contingency cases as a class and "treat a determination of how a particular market compensates for contingency as controlling future cases involving the same market." *Delaware Valley II*, 483 U.S. at 733, 107 S.Ct. at 3090 (O'Connor, J., concurring). The fee applicant bears the burden of establishing the degree to which a particular market compensates for contingency. Also, the applicant must establish that without an enhancement for risk the prevailing party " 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' " *Id.* (quoting plurality opinion, *Delaware Valley II*, 483 U.S. at 731, 107 S.Ct. at 3089).

Under this standard, the district court improperly granted a contingency enhancement. We think the court granted the enhancement based on risks unique to Hendrickson's particular case. According to the court, a contingency enhancement was "appropriate and reasonable given the highly contingent and speculative nature of plaintiffs' action." *Hendrickson*, 740 F.Supp. at 646. The court found that Hendrickson's lawsuit was highly contingent because it "involved complex federal issues and was 'akin to a case of first impression.' " *Id.* at 645 (quoting *Hendrickson*, 672 F.Supp. at 1130 n. 1). However, as indicated, considerations relating to the complexity and novelty of the issues will already be reflected in the lodestar amount, and cannot be used again to increase the fee. *See Delaware Valley II*, 483 U.S. at 733–34, 107 S.Ct. at 3090–91 (O'Connor, J., concurring).

We do not find specific evidence in the record to establish that the unavailability of a risk enhancement would have caused Hendrickson substantial difficulty in locating competent counsel. The affidavits introduced by Hendrickson show there are a limited number of civil rights attorneys in Iowa, and few nationally recognized attorneys practicing juvenile law. However, evidence of a limited number of qualified lawyers does not, by itself, constitute "proof that adjustment for contingency was a crucial factor in [Hendrickson's] ability to obtain counsel." *Jenkins*, 838 F.2d at 268. The record does not establish with the requisite specificity that an enhancement for contingency was required in the relevant market.

The officials also contest their responsibility for ninety percent of the fees. The officials argue that they should not be responsible for fees accrued before their appearance in the case or for fees associated with Hendrickson's eighth amendment and fourteenth amendment causes of action because these theories were not asserted against them.

■ A fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. A lawsuit such as Hendrickson's, which includes several related legal theories based on a common core of facts, should not be viewed as a series of discrete causes of action, and compensation should not be awarded on a claim-by-claim basis. In such a case, counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonably expended to achieve a successful result. The district court based its fee allocation on the interrelated nature of the claims against the state and county officials, the primary culpability of the state officials, and counsel's devotion of only ten percent of their time seeking relief from county officials. These are legitimate grounds for the court's allocation. *See id.* at 435–36, 103 S.Ct. at 1940–41; *Jenkins,* 838 F.2d at 266–67; *Catlett v. Missouri Highway and Transp. Comm'n,* 828 F.2d 1260, 1270–71 (8th Cir.1987).

■ Finally, the officials object to the hourly rate sought by one of Hendrickson's attorneys, Harry F. Swanger. The officials assert that Mr. Swanger's hourly rate should be reduced from $180.00 to $150.00 because his qualifications are similar to qualifications of counsel who have been awarded $150.00 per hour.

Mr. Swanger's hourly rate is reasonable in light of his experience. In determining whether a fee is reasonable, " 'the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.' " *McDonald v. Armontrout,* 860 F.2d 1456, 1461 (8th Cir.1988) (quoting *Blum,* 465 U.S. at 898, 104 S.Ct. at 1548).

The district court reasoned that Mr. Swanger's compensation should be comparable to nationally-prominent federal civil rights counsel, rather than local Iowa counsel, because he is a recognized national expert in juvenile law. The court determined that the $180.00 hourly rate was similar to rates charged in the community by nationally-prominent civil rights attorneys. This determination was within the court's discretion and is fully supported by the record. *See* Appendix at 85–94 (affidavit of Harry F. Swanger), 115–16 (affidavit of Mark I. Soler), 119 (affidavit of Thomas A. Connelly); Supplemental Appendix at 16 (affidavit of David Ferleger), 32–33 (affidavit of Frank Susman).

III. CONCLUSION

Based on the reasons set forth, the district court is affirmed in part. The court's findings that Hendrickson is a prevailing party under 42 U.S.C. § 1988, that the state officials are liable for ninety percent of the fees, and that the hourly rate of Hendrickson's counsel, Harry F. Swanger, is reasonable are affirmed. However, the court's imposition of a twenty-five percent fee enhancement is reversed. Accordingly, this matter is remanded to the district court with directions to award attorney's fees consistent with this opinion.