**In re HILLSBOROUGH HOLDINGS CORP., Debtor.**

**Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1 and 90–11997–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 31, 1995.

Don M. Stichter, Tampa, FL.

Michael Crames, New York City.

Daniel Golden, New York City.

John Genovese, Miami, FL.

Paul O'Hearn, Atlanta, GA.

Marc Kirschner, New York City.

Zala Forizs, St. Petersburg, FL.

David E. Massengill, New York City.

## ORDER ON OBJECTION TO PORTION OF FINAL FEE APPLICATION OF STROOCK & STROOCK & LAVAN SEEKING TO RECOVER A $1,000,000 PREMIUM

ALEXANDER L. PASKAY, Chief Judge.

THIS is a confirmed Chapter 11 case and the matter under consideration is the request by Stroock & Stroock & Lavan, (Stroock), counsel for the Official Bondholders Committee, for a $1,000,000.00 premium and the objection to same filed by Walter Industries, Inc. f/k/a Hillsborough Holdings Corporation, et. al. (Debtors). In its Final Fee Application, Stroock seeks a $1,000,000 premium based upon the extraordinary efforts expended by Stroock throughout these cases, the superior quality of that work and, most importantly, the overwhelmingly successful result obtained for the subordinated bondholders in these cases. According to Stroock, this request represents only 15% of all fees sought in this case by Stroock and .1% of the total claims held by the subordinated bondholders they represented.

In support of its request, Stroock points to six specific matters which it undertook on behalf of the Committee, the ultimate results of which changed the course of this reorganization and ultimately resulted in the successful reorganization of these Debtors. These matters are as follows:

(1) Opposition of the Post-petition financing facility for Mid–State Homes;

(2) opposition to the Motion by the Banks and B & C noteholders for Post-petition interest payments;

(3) opposition to the Banks interest settlement motion;

(4) prosecution to the Motion to Terminate of Exclusivity;

(5) opposition to Attempts by the Debtors to disband the Bondholders Committee; and

(6) Participation in Settlement with Asbestos Claimants

It is now uniformly recognized that the starting point for calculating reasonable attorney's fees in an unusual case is the same as in an usual case, that is, the lodestar method. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). After arriving at the reasonable fees, the court may then analyze any unusual factors claimed by the applicant to justify an enhancement of the lodestar amount. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

■ While recognizing that the general principles underlying enhancements under fee-shifting statutes may require some accommodation to the peculiarities of bankruptcy matters, the Ninth Circuit has held that despite certain differences "§ 330 and fee-shifting statues are sufficiently similar to justify applying those general principles for fee enhancements in bankruptcy cases." *In re Manoa Finance Co., Inc.*, 853 F.2d 687 (9th Cir.1988). However, the lodestar amount is strongly presumed to constitute reasonable compensation for the purposes of § 330, even in unusual cases. The Supreme Court emphasized on several occasions that the novelty and complexity of the litigation are reflected in the lodestar and should not be the basis for the upward adjustment of attorney's fees. *Pennsylvania v. Delaware; Blum v. Stenson* For instance, in the case of *Hendrickson v. Branstad*, 934 F.2d 158 (8th Cir.1991), the Court of Appeals, following the admonition of the Supreme Court held that the complexity of the case and the absence of court precedent are not bases for enhancement. In the case of *Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir.1993), the Court of Appeals rejected enhancement based upon novelty and difficulty by holding that "[a]ll counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate." Lower courts almost uniformly heeded the admonition that upward adjustment for outstanding representation should be rare.

■ It should be noted at the outset that this Court has in the past consistently rejected fee enhancements. However, these Chapter 11 cases were truly unique, and the efforts of counsel representing the major constituents were substantially more than routine. It was obvious from the outset in these cases, that the crucial issue which would "make or break" the Debtors' efforts to successfully reorganize was centered around a satisfactory resolution of an ever-growing threat by asbestos related personal injury claimants who sought to visit liability for their injuries, amounting to billions of dollars, on these Debtors.

While it is true that the Debtors were initially successful in defeating the attempts by the asbestos claimants to pierce the corporate veil of the Debtors' predecessor-in-interest Jim Walter Corporation in this Court and before the District Court, no one assumed that this would end the litigation. On the contrary, it was evident that the asbestos claimants would challenge the adverse decisions. As this Court repeatedly stated, no meaningful plan of reorganization could be proposed unless and until this major crisis was resolved with finality.

In sum, the obstacles which presented themselves to the professionals were unique, and for the most part, unforeseen at the time of retention. The majority of the years this case had been pending has been marked by the stark divisions of the parties in interest in this case. Clearly actions taken by the Debtors to disband the Bondholders Committee and the pursuit of competing plans are evidence of these divisions. Taking into consideration the wide gulf between the Debtors and the major constituents, especially between the Debtors and the subordinated bondholders, the fact that these parties ultimately put aside their differences and were able to propose a consensual plan is evidence of the extraordinary efforts expended by

Stroock and the other professionals in this case.

One cannot ignore the fact that the efforts of Stroock from the very commencement of these cases operated as a major driving force, without which there could not have been an effective reorganization of these Debtors. It was the primary, if not the only challenge, to the Debtors' efforts to delay reorganization until it successfully carried to finality the litigation with the asbestos related personal injury claimants, a course of action which would have been extremely costly to the Debtors and was fraught with a real danger of disaster of dismemberment of these otherwise economically viable companies.

While the Debtors at one time consistently refused to even consider negotiations with the asbestos related personal injury claimants, it was Stroock who initiated the discourse with these Claimants, and who was the catalyst in breaking the deadlock between the Debtors and the asbestos related personal injury claimants. It was Stroock who urged this Court to terminate exclusivity to allow competing plans to emerge and to challenge the reorganization strategy followed by the Debtors. Finally, it was Stroock, who formulated a competing Plan of Reorganization which forged a consensus among the creditor constituents. This ultimately, in turn, forced the Debtors to recognize that their Plan could not be confirmed and possibly neither the Joint Creditor's Plan if the Debtors prevailed on certain preconfirmation issues and that the end result would be a total liquidation of the Debtors, a result no one wanted. This led to the realization by the Debtors that some accommodation must be made with the asbestos related personal injury claimants and that the time had arrived to negotiate with them in order to escape the frightful alternative of a dismissal or conversion of these cases to Chapter 7 liquidation. Based upon these reasons, this Court is satisfied that a fee enhancement should be awarded to Stroock for their invaluable efforts in this case which played a major role in the ultimate success and confirmation of the Joint Plan on March 3, 1995.

This leaves for consideration whether or not it would be appropriate to award an enhancement to the professionals who represented the major constituents involved in the reorganization process, even though an enhancement was not requested. The extraordinary efforts by the professionals representing the major constituents after an agreement was reached in principle to accommodate the asbestos related claimants was certainly a yeoman effort and was over and above what is expected of attorneys to accomplish in a very short span of time. Their efforts and the success ultimately obtained was doubly significant because of the extreme difficulty in structuring a Joint Plan which would achieve a final resolution of all the asbestos related claims. In sum, what was performed by these professionals between October, 1994 and March 3, 1995, when the Joint Plan was confirmed, was nothing short of a truly remarkable tour de force. In this Court's judgment, the efforts expended which produced the successful reorganization of these cases certainly justify an enhancement to those professionals. Obviously, it would be unfair to reward the Debtors' professionals for fighting the efforts of the Bondholders Committee in their attempts to resolve the divisions of the parties. Therefore the Debtor's professionals also should be entitled to an award enhancement, but to a lesser degree. Accordingly, the following enhancements shall be made for the following reasons:

(1) Stroock: an enhancement of 10% of all fees awarded in this case for the reasons described earlier.

(2) Kaye, Scholer: an enhancement of 10% of fees awarded for the services rendered during the time period of October 1, 1994 through March 3, 1995 for their efforts in obtaining a consensual plan of reorganization and their contribution to the successful reorganization.

(3) Stichter, Riedel: an enhancement of 10% of fees awarded for the services rendered during the time period of October 1, 1994 through March 3, 1995 for their efforts in obtaining a consensual plan of reorganization and their contribution to the successful reorganization.

(4) Simpson Thacher: an enhancement of 5% of all fees awarded during the pendency of this case for their superb representation of the debtors and the extraordinary results obtained in the veil piercing litigation.

(5) Jones, Day: an enhancement of 10% of fees awarded for the services rendered during the time period of October 1, 1994 through March 3, 1995 for their efforts in obtaining a consensual plan of reorganization and their contribution to the successful reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Objection to the Request for Premium is hereby overruled and a fee enhancement of 10% of all fees awarded in this case is hereby awarded to Stroock & Stroock & Lavan. It is further

ORDERED, ADJUDGED AND DE-CREED that a fee enhancement is hereby awarded to the law firms of Kaye, Scholer, et. al., Stichter, Riedel, Blain & Prosser, P.A., Jones Day, Reavis & Pogue, P.A. and Simpson Thacher & Bartlett as set forth above.

DONE AND ORDERED.