**IT IS HEREBY ORDERED** that plaintiffs' motion to remand is granted.

George L. **WEAVER**, Plaintiff,

v.

Harold **CLARKE**, et al., Defendants.

No. 4:CV93–3356.

United States District Court,
D. Nebraska.

June 18, 1996.

Bernard J. Monbouquette, Omaha, NE, for Plaintiff.

Terri Weeks, Assistant Attorney General, Lincoln, NE, for Defendants.

## MEMORANDUM AND ORDER

KOPF, District Judge.

Pending before the court is Plaintiff's application for attorney's fees (filing 111). I will grant Plaintiff's motion although I will adjust the award amount based on objections to the application by the defendants. I shall make a total award of $11,299.17.

### Factual and Procedural Background

Plaintiff is a non-smoking inmate incarcerated in the Lincoln Correctional Center (LCC). Plaintiff sued the defendants pursuant to 42 U.S.C. § 1983 alleging they have been deliberately indifferent to the serious health risks non-smokers face from the continuous exposure to environmental tobacco smoke (ETS). Even though the defendants eventually placed Plaintiff in a non-smoking cell, Plaintiff alleges his health problems persist since he continues to be exposed to ETS drifting out of adjacent smoking cells which permeates the housing unit. Plaintiff specifically alleged the exposure to ETS has caused headaches, dizziness and nausea.

Plaintiff's complaint sought monetary damages and injunctive relief. Plaintiff's claims for monetary damages were dismissed when Defendants prevailed on their motion for summary judgment based on qualified immunity. (Filing 65). Plaintiff sought preliminary injunctive relief in the form of an order enjoining the defendants from exposing him to an environment "permeated" with ETS until his claims could be decided on the merits. (Filing 61). While Magistrate Judge Piester recommended that Plaintiff's motion for preliminary injunctive relief be denied because of a lack of irreparable injury (filing 90) the magistrate judge did order an expedited evidentiary hearing be scheduled on Plaintiff's request for permanent injunctive relief (filing 90).

During the course of the January 18 and 19, 1996 hearing on Plaintiff's motion for preliminary injunctive relief, Magistrate Judge Piester heard evidence which, from that time forward, gave Defendants actual knowledge of a substantial risk of serious harm to Plaintiff. From the time Plaintiff filed his complaint in 1993 until the date of the preliminary injunction hearing, Defendants have argued that they had no actual knowledge that the conditions of Plaintiff's confinement subjected him to any risk of serious harm (filing 90, p. 9).

Judge Piester specifically concluded that the evidence presented during the hearing on Plaintiff's motion for preliminary injunction was sufficient to support a finding that the risk to Plaintiff of the present levels of ETS, over time, constituted a substantial risk of serious harm to Plaintiff's health. Judge Piester wrote that once the court concluded that such risk was substantial, *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) required the defendants to take reasonable precautions to avoid the risk. *Id.* Judge Piester remarked that any lesser response would amount to obduracy, and it is obdurate conduct which violates the Eighth Amendment. Most significantly, Judge Piester concluded Plaintiff had demonstrated a likelihood of success on the merits of his claim for permanent injunctive relief (filing 90, p. 10).

In adopting Judge Piester's recommendation that the motion for preliminary injunction be denied I adopted only his findings as they pertained to Plaintiff's failure to prove he faced irreparable harm before an expedited decision on the merits could be made (filing 93). I did not specifically adopt Judge Piester's findings that Defendants now had actual knowledge that their continued conduct in exposing Plaintiff to ETS would amount to an Eighth Amendment violation. It is interesting to note, however, that the defendants did not make any objections to any of the findings in the magistrate's prior ruling.

On February 12, 1996, 14 days after Judge Piester's ruling, Defendant Harold Clarke, in his capacity as director of the Department of Correctional Services (DCS), imposed a smoking ban in all DCS owned and/or operated buildings. The ban took effect March 18, 1996. (Filing 96, Ex. 17). Harold Clarke stated when he announced the ban that "pending inmate litigation, both locally and

nationally on the issue of second hand smoke are concerns that must be addressed." (Filing 96, Ex. 17). The expedited evidentiary hearing on the merits of Plaintiff's claim had been scheduled for May 15, 1996.

With the adoption of the smoking ban, I concluded Defendants were entitled to summary judgment on the merits of Plaintiff's claim because Defendants had rectified any Eighth Amendment violations (filing 108). At the time I granted Defendants' motion for summary judgment. I invited the parties to address whether Plaintiff may still be a prevailing party for purposes of an attorney's fee award. The parties have briefed the question and Plaintiff has submitted a fee application (filing 111). I will first address Defendants' arguments that Plaintiff is not entitled to a fee award.

## Defendants' Arguments Opposing Fee Award

■ Defendants first argue that the United States Supreme Court's recent opinion in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) precludes an award of fees since 42 U.S.C. § 1988, the attorney's fee statute, does not contain an explicit waiver of the State of Nebraska's Eleventh Amendment immunity. (Def's Brief at 4).

I have concluded *Seminole Tribe* is not applicable to this case for the reason that the immunity question in *Seminole Tribe* arose in the context of the Indian Commerce Clause whereas the fee issue presented in this case arises under civil rights statutes made applicable to the states by virtue of the Fourteenth Amendment. It is undisputed that Congress has the authority to abrogate states' immunity under the Fourteenth amendment. *Id.,* at ——, n. 15, 116 S.Ct. at 1131, n. 15. And the Supreme Court has specifically held that Congress properly used this power under the Fourteenth Amendment when it enacted the Civil Rights Attorney's Fee Awards Act of 1976. *Hutto v. Finney,* 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–76, 57 L.Ed.2d 522 (1978) (Congress utilized its power under the Fourteenth Amendment when it enacted the Civil Rights Attorney's Fees Awards Act of 1976 and thus

the Eleventh Amendment was no bar to a fee award against a state public official).

■ Defendants next argue that the recently enacted Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (April 26, 1996) (hereafter PLRA) narrows the definition of a prevailing party so that a prisoner's attorney will be compensated only for those fees reasonably and directly incurred in proving an actual violation of a federal right. Although the defendants' argument is general, it appears that the defendants rely upon Section 803(d) of the Act, amending 42 U.S.C. § 1997e(d)(1)(A) to provide, among other things, that no fees shall be awarded unless "directly and reasonably incurred in proving an actual violation of the plaintiff's rights....". The defendants argue this portion of the PLRA abolishes the catalyst theory upon which attorney's fees may be awarded. *See Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

Initially I do not believe the portion of PLRA upon which the defendants rely should be applied retroactively. In this case all of the action that triggered entitlement to an attorney's fee award took place prior to the date of enactment of the PLRA. Still further the portion of the PLRA upon which defendants rely has no stated effective date as compared with section 802 of the Act. Accordingly, since all the events that triggered entitlement to attorney's fees took place prior to the date of enactment of the PLRA and since Congress has not specified an effective date, retroactive imposition of the section of the PLRA upon which defendants rely would cause "manifest injustice" to lawyers like Plaintiff's counsel who have performed their ethical obligations to the courts upon settled expectations premised upon precedent that if they "prevailed" they would be compensated. Therefore, I need not apply the Act retroactively. *Bradley v. Richmond School Board,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974) (In deciding whether to apply change in law regarding attorney fees to a case that had not yet become final regarding fees earned prior to date of enactment Court

examined whether Congress provided clear directive and whether imposition of the change would work "manifest injustice".)

■ Moreover, even if· I applied the PLRA, I must presume Judge Piester was correct in his conclusion that a failure to remedy the smoking situation would result in an Eighth Amendment violation. Defendants never challenged that finding. They do not challenge that finding now. If Judge Piester's judicial declaration was correct, and I must presume it to be, then certainly the section of the PLRA upon which defendants rely is satisfied as Plaintiff presented sufficient evidence at the hearing on the preliminary injunction to persuade Judge Piester that a violation of Plaintiff's rights would occur each and every day after the judicial declaration until and unless the situation was remedied.

Thus, at the very least Plaintiff established a presumptive violation of the Eighth Amendment for the period of time between the date of Judge Piester's judicial declaration (January 29, 1996) and the date (February 12, 1996) Defendants effectively changed the smoking policy. Clearly the implementation of the smoking ban came about as a result of the order which put Defendants on notice that continuance of their past practice was obdurate. Consequently, I find that the requested attorney's fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights, and therefore the section of the PLRA that the defendants rely upon is satisfied in this case (assuming the PLRA otherwise applies).

### Fee Application

Section 1988 of Title 42 of the United States Code provides for an award of attorney's fees to prevailing parties in litigation such as that before the court. In 1983, attorney-fee disputes were consuming substantial judicial resources. Accordingly, the United States Supreme Court issued its seminal opinion in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), stating that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7. In *Hensley,* the

Court specifically warned lower courts not to permit fee requests to spawn "a second major litigation." *Id.* at 437, 103 S.Ct. at 1941. Following the. Supreme Court's opinion in *Hensley,* the Federal Judicial Center published a comprehensive examination of the issue of attorney fees. Alan Hirsch & Diane Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation* (Federal Judicial Center· 1994) [hereinafter *"Awarding Attorneys' Fees"*].

Having carefully considered *Hensley,* the precedents which followed it, and *Awarding Attorneys' ·Fees,* I shall now endeavor to address the specific issues presented by this fee application. .

#### 1.

■ The first issue to be considered in any attorney fee case is whether an award of any kind is in order. An award is appropriate in this case because: (1) the lawsuit was a "necessary and important" factor in achieving the smoking ban and (2) the implementation of the smoking ban was not "gratuitous or voluntary". *Hendrickson v. Branstad,* 934 F.2d 158, 161 (8th Cir.1991). That this suit was "necessary and important" to the smoking ban and that the smoking ban was not "gratuitous or voluntary" was admitted when the ban was announced. Harold Clarke, one of the defendants, stated when he announced the ban that "pending inmate litigation, both locally and nationally on the issue of second hand smoke are concerns that must be addressed." (Filing 96, Ex. 17).

Plaintiff's application for attorney's fees is timely, and Plaintiff is the "prevailing" party as that term has been understood. *Maher v. Gagne,* 448 U.S. at 129, 100 S.Ct. at 2574 (A party may be a "prevailing party" when the suit has vindicated constitutional rights even "'without formally obtaining relief.'") (citation omitted). The smoking ban was the relief Plaintiff sought in his quest for injunctive relief. *See Texas Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). Moreover, there are no special circumstances which would justify this court's refusal to award attorney fees. *See e.g., Blanchard v. Bergeron,* 489 U.S. 87, 89 n. 1,

109 S.Ct. 939, 942 n. 1, 103 L.Ed.2d 67 (1989) (quoting *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

**2.**

What constitutes attorney fees is not always evident. While it is clear that fees for lawyers are included in such an award, it is not obvious that the fees of others are also included.

■ The Supreme Court has decided that fees for paralegal and law-clerk work should be allowed at the rates billed to clients for such services if that is the practice in the relevant market. *Missouri v. Jenkins,* 491 U.S. 274, 285, 287–88 & n. 9, 109 S.Ct. 2463, 2470, 2471–72 & n. 9, 105 L.Ed.2d 229 (1989). Thus, any component of an attorney-fee award should also include an amount equivalent to what the law firms would customarily bill clients for the work of paralegals and law clerks, provided, of course, that it is the practice in the relevant market to bill such services to clients.

I have previously concluded it is the practice in Lincoln, Nebraska to bill clients for the work of paralegals and law clerks. Indeed, that is the practice in most urban areas in the State of Nebraska. *See, e.g., Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan,* 814 F.Supp. 799, 805 n. 5 (D.Neb.1993), *aff'd,* 25 F.3d 616 (8th Cir.1994) (stating "[t]he rates for the law firm's nonprofessional employees, including paralegals, librarians, and law clerks, were between $60–$65 an hour. These are customary charges in the relevant economic market."). *See also, Tabech v. Gunter,* 869 F.Supp. 1446, 1455 (D.Neb.1994).

■ The same principle applies to out-of-pocket expenses; that is, if an out-of-pocket expense is normally billed to fee-paying clients in the relevant economic market, then such expenses are a proper component of an attorney-fee award. *Awarding Attorneys' Fees* at 18–19 & n. 83. The evidence in this case establishes that the expenses claimed are the type customarily billed to fee-paying clients in the relevant economic market. (Filing 111, Exhibits B and C).

**3.**

The Supreme Court established in *Hensley* that the award in fee-shifting cases is based upon the so-called "lodestar." 461 U.S. at 433, 103 S.Ct. at 1939. The lodestar is calculated by determining the number of hours reasonably expended, multiplied by the applicable hourly *market* rate for the relevant legal services.[1] *Id.*

■ The reasonable rate is determined by reference to the marketplace. *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) ("[W]e have consistently looked to the marketplace as our guide to what is 'reasonable.'"). As the Court also noted, the marketplace takes into account variations in the skill and experience of attorneys. *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891 (1984).

■ With respect to hours reasonably expended, that is ultimately a judgment for the court. The issue, however, "is not whether hindsight vindicates an attorney's time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Awarding Attorneys' Fees* at 24–25 n. 116 (quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2nd Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993)).

1. While many courts continue to use the so-called *"Johnson* factors" (as this court does from time to time), *"Hensley* makes clear that these factors matter only as they bear on the market rate or hours reasonably expended, or, in rare cases, if they are a basis for adjusting the lodestar." *Awarding Attorneys' Fees* at 19 n. 84. I have considered each and every *"Johnson"* factor in arriving at my decision. Those factors are: (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) undesirability of case; (11) nature and length of relationship with clients; and (12) awards in similar cases. *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir.1974).

The Supreme Court made it clear that counsel are required to exercise billing judgment and that district courts are required to exclude from initial fee calculations hours that were not reasonably expended, including excessive, redundant, or otherwise unnecessary work. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

The documentation required to support a fee application varies from circuit to circuit. *Awarding Attorneys' Fees* at 25. In the Eighth Circuit, determining the adequacy of the records is largely left to the discretion of the trial court. *Awarding Attorneys' Fees* at 26 n. 125 (citing *MacDissi v. Valmont Indus.,* 856 F.2d 1054, 1061 (8th Cir.1988)).

When calculating the lodestar, it is important to recognize that a number of things are subsumed within it. As a general rule, reductions for insufficient documentation and the like are to be included in the calculation of the lodestar. *Awarding Attorneys' Fees* at 35. Moreover, in the Eighth Circuit, the novelty or difficulty of the case should be included when calculating the lodestar rather than used as an enhancement. *Awarding Attorneys' Fees* at 36 (citing *Hendrickson v. Branstad,* 934 F.2d 158, 163 (8th Cir.1991)).

Finally, the Supreme Court has stated that a trial court may in its discretion compensate the award recipient for a delay in payment. This can be achieved by calculating the lodestar in current dollars, which is my practice. *See, e.g., Missouri v. Jenkins,* 491 U.S. at 284, 109 S.Ct. at 2469.

### 4.

I turn now to the calculation of the lodestar.

### a.

I shall first examine what is a reasonable hourly rate when viewed at current market rates. As I have noted before, "this court customarily approves hourly rates ranging from $85–105 per hour" in civil rights cases. *Lutheran Medical Ctr.,* 814 F.Supp. at 805. I believe that range is applicable in this case and is an accurate reflection of what the market charges in and around Lincoln, Nebraska for civil rights litigation of the type involved here.

I will apply the high end of the market range to legal services rendered by Mr. Monbouquette as I believe I have the discretion to use the high end of the market range. *Awarding Attorneys' Fees* at 21 n. 92 (citing *Shakopee Mdewakanton Sioux Comm. v. City of Prior Lake,* 771 F.2d 1153 (8th Cir. 1985), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1185, 89 L.Ed.2d 301 (1986)).

As noted earlier, the so-called *Johnson* factors are subsumed in the lodestar calculation. *Awarding Attorneys' Fees* at 19 n. 84. This is nothing more than a recognition that normally the rates lawyers currently charge fee-paying clients are a good guide to what those same lawyers should be paid by virtue of an attorney-fee award. *Id.* at 20–21 ("Courts all agree that an attorney's customary billing rate is the proper starting point for calculating fees."). Nevertheless, three so-called *Johnson* factors should be highlighted, although all such factors have been considered.

It is useful to consider counsel's experience, reputation, and ability. Mr. Monbouquette graduated from law school in 1973. After three years as a government agency staff attorney he began practicing law in Massachusetts from 1977 through 1988. After moving to Omaha, Nebraska in December 1988 he practiced in small firms in Omaha through May, 1993. Mr. Monbouquette also served as a Deputy Douglas County Attorney for one year, where he was charged with defending civil rights cases relating to the conditions of confinement of county prisoners. Mr. Monbouquette has returned to private practice and at this time practices primarily in the areas of employment, discrimination and wrongful termination matters. (Filing 111, Exhibit A, ¶ 4).

I also note an affidavit filed by Thomas F. Dowd, an "av" rated labor lawyer in Omaha, Nebraska with 30 years experience, much of it federal court litigation. Mr. Dowd states during Mr. Monbouquette's association with his firm Mr. Monbouquette was awarded an attorney's fee of $120.00 per hour for his work on an employment discrimination case in federal court in Omaha, Nebraska in which their client prevailed. Mr. Dowd states a fee

in this case of $125.00 per hour for a lawyer with Mr. Monbouquette's experience would be reasonable for both in-court and out-of-court time. (Filing 111, Exhibit D, ¶ 1). Mr. Dowd has practiced in this court and has been awarded an attorney's fee of $160.00 per hour following a one-day jury trial in an age discrimination case. *See Stokes v. City of Omaha,* CV89-O-664.

I also believe it helpful to recognize the nature and length of counsel's relationship with the client in this case. Mr. Monbouquette was appointed by the court to represent Plaintiff on November 22, 1993. This case culminated in the implementation of the smoking ban on February 12, 1996. The court appreciates Mr. Monbouquette's willingness to see this litigation through to the end, especially in view of the fact he is a solo practitioner. (Plf's Brief at 5).

I would also like to note that I am satisfied that this case was sufficiently difficult to warrant the lodestar rate used. Mr. Monbouquette was not only an advocate in this court but he was called upon to demonstrate appellate advocacy skills when the defendants appealed an order of this court. This court appreciates the difficulties which are associated with keeping two balls in the air at once.

**b.**

■ Plaintiff seeks an attorney's fee award in the total amount of $22,317.59. This reflects an expenditure of 128.50 hours at $130.00 per hour by Mr. Monbouquette; and expenditure of 22.25 hours by Mr. Monbouquette's law clerk at an hourly rate of $40.00 per hour;[2] and costs and expenses in the amount of $4,722.59. As I have previously indicated I will award Plaintiff fees based on an hourly rate of $105.00 rather than at a rate of $130.00 per hour.

I am persuaded over the course of nearly three years Plaintiff's counsel could have easily expended 128.50 hours on this case. Nevertheless, I will reduce the amount of hours expended by Mr. Monbouquette by 56.63 hours and I will reduce the hours spent by

his law clerk by 2.25 hours. I have reduced the amount of allowable hours as I am persuaded that many of the objections premised on noncompliance with NELR 83.14 made by Defendants to specific entries on the fee application have sufficient merit to warrant such a reduction. Therefore, I find the total hours allowed for Mr. Monbouquette to be 71.87. I find the total hours allowed for his law clerk to be 20.00.

**c.**

■ Plaintiff has also submitted an application for reimbursement for expenses incurred during this litigation. Plaintiff seeks an award in the amount of $4,722.59. Defendants have again objected to the great bulk of the expense request for the reason the application is not specific enough to put them on notice as to what was involved in a particular expense item, and for this reason the request does not specifically comply with NELR 83.14. I agree with defendants that the lack of specificity on many of the expense entries precludes an award to the extent Plaintiff seeks, but I will award Plaintiff $2,952.82 in expenses.

■ I note Plaintiff seeks a lump sum award in the amount of $3,454.04 for expenses related to the testimony a medical expert during the preliminary injunction hearing in January 1996. I have disallowed $1,554.04 of this amount for the reason the request does not comply with the local rules. I note, however, that $1,900.00 from the Federal Practice Fund was previously allocated to Plaintiff to pay expert and travel fees related to the expert's appearance at the January 1996 hearing (filings 79 and 80). As the court previously approved this expenditure, and as the court file is sufficiently clear about the application of this amount, I will allow $1,900.00 of the $3,454.04 amount attributable to the use of a medical expert.[3]

**d.**

■ I will not reduce Plaintiff's fee award based on what Defendants argue is Plaintiff's limited success. If Judge Piester

---

2. The $40.00 rate for law clerks is substantially lower than the $60–65 rate previously approved in *Lutheran Medical Ctr.* as the customary rate in the marketplace. Furthermore, the defendants have not specifically objected to the $40.00 rate

or the inclusion of law clerk time in the fee application.

3. Plaintiff is reminded the Federal Practice Fund must be reimbursed out of the fee award to the extent of all advances received from the Fund.

was correct in his analysis that an Eighth Amendment violation was occurring, the defendants' implementation of the total smoking ban 12 days after the January 29, 1996 order was the primary relief Plaintiff sought all along. That the defendants are entitled to qualified immunity from damages does not detract from the results Plaintiff's lawsuit achieved.

**5.**

I have therefore determined to grant Plaintiff's fee application in part and will award the plaintiff (for the benefit of his lawyer) an attorney's fee in the amount of $8,346.35, which represents the sum of 71.87 hours at $105.00 per hour and 20 hours at $40.00 per hour. I will award expenses in the amount of $2,952.82 for a total award of $11,299.17.

Accordingly,

IT IS ORDERED filing 111 is granted in part and the plaintiff (for the benefit of his lawyer) is awarded an attorney's fee in the amount of $8,346.35 and expenses in the amount of $2,952.82 for a total award of $11,299.17.